## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DR. AL MALIK OFFICE FOR FINANCIAL AND ECONOMIC CONSULTANCY,<br>    *Plaintiff*,<br><br>    v.<br><br>HORSENECK CAPITAL ADVISORS, LLC,<br>    *Defendant*. | No. 3:19-cv-1417 (JAM) |

### ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

This case is about a consulting fee dispute. The plaintiff claims that the defendant agreed to pay the plaintiff about $1.5 million for consulting services in 2018 but that the defendant has only paid about half that amount. The plaintiff has filed this lawsuit alleging numerous claims, and the defendant in turn has moved to dismiss the claims for statutory theft and breach of the implied covenant of good faith and fair dealing. I will grant in part and deny in part the motion to dismiss.

### BACKGROUND

The following facts are drawn from the complaint and are assumed to be true solely for the purpose of this motion to dismiss. Doc. #1. Plaintiff Dr. Al Malik Office for Financial and Economic Consultancy ("Malik") is an eponymous sole proprietorship owned and operated by Dr. Ahmed Al Malik, a citizen and resident of Saudi Arabia. Malik provides consulting services for entities seeking funds from investors in Saudi Arabia. Doc. #1 at 1 (¶ 1).

Defendant Horseneck Capital Advisors, LLC ("Horseneck") is a Connecticut limited liability company that raises investment capital for businesses in the United States. Horseneck is

based in Greenwich, Connecticut, and is owned and managed by Christopher Franco. *Id.* at 1 (¶ 2).

Malik has sued Horseneck principally seeking payment for consulting services that Malik rendered in Saudi Arabia for one of Horseneck's investment fund clients. Malik's arrangement with Horseneck contemplated that Horseneck would pay Malik a certain percentage of the net fees that Horseneck received from the client for whom Malik provided consulting services.

In 2013, Malik agreed with Horseneck to furnish consulting services for Horseneck's client, and Horseneck in turn agreed to pay to Malik an amount equal to 60% of the net fees that Horseneck received from the client. Malik fully performed under the agreement, and Horseneck paid Malik 60% of the fees after subtracting a broker-dealer fee. *Id.* at 2 (¶¶ 3-4).

Two years later, Horseneck engaged Malik again for the same client, agreeing to pay 70% of the net fees received. Malik fully performed under the agreement, and Horseneck paid 70% of the fees after subtracting a broker-dealer fee and certain claimed expenses. *Ibid.* (¶¶ 6-7).

The trouble arose after Horseneck again engaged Malik for the same client in 2018. Although the parties did not enter into a written agreement, Malik alleges they had an agreement-in-fact for Horseneck to pay 70% of the net fees received as it had in 2015. Malik fully performed under the agreement but Horseneck refused to pay as it had before, asserting for the first time that the fees could be subject to withholding for U.S. income tax. Horseneck made this claim despite the fact that none of Malik's services were rendered in the United States. *Id.* at 2-3 (¶¶ 9-10).

The complaint recites various emails to Malik from Christopher Franco on behalf of Horseneck regarding the tax withholding issue. On September 11, 2018, Franco wrote to Malik stating that "[t]he issue is getting the tax opinion from the attorneys." *Id.* at 3 (¶ 11). Franco

further represented that "I have been promised the tax advice this week" and that the broker/dealer "got the gross fee at the end of last week, and they will release the net fees to [Horseneck] by the end of next week." *Ibid*.

Later that month, Franco wrote, "I have not received the funds from the broker-dealer yet. They are prepared to release funds to me, however the tax question is not finalized so therefore the amount is in question." *Ibid*. (¶ 12). He continued: "I have asked my lawyers to consult with the taxing authorities. They have sent a letter…for guidance on the question. I am told we should get an answer shortly." *Ibid*.

Horseneck then presented Malik with a Partial Payment Agreement ("PPA") that contained "an acknowledgement that a partial fee is being paid, and that additional fees will be paid, subject to the conclusions of [Horseneck's] counsel regarding the tax issues." *Id*. at 3-4 (¶ 14). Under the terms of the PPA, Horseneck would initially pay $723,125—an amount slightly less than half the amount that Malik alleges to be actually owed for consulting services in 2018. *Ibid*. (¶¶ 14-15).

The parties executed the PPA. *Id*. at 4 (¶ 16). But Horseneck has since made no efforts to resolve or provide corroboration of the purported tax questions. Malik alleges that Horseneck has refused even to provide the letter referenced by Franco that "purportedly request[ed] guidance from the 'taxing authorities.'" *Ibid*. (¶ 17).

Malik filed this complaint in September 2019. Doc. #1. The complaint alleges the following seven claims: breach of contract (Count One), statutory theft (Count Two), unjust enrichment (Count Three), fraudulent inducement (Count Four), breach of the implied covenant of good faith and fair dealing (Count Five), specific performance (Count Six), and for declaratory judgment (Count Seven). Horseneck has now filed a motion to dismiss the claims for

statutory theft and breach of the implied covenant of good faith and fair dealing. Doc. #14; *see also* Doc. #15.

DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless it recites enough non-conclusory facts to state plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019).

### *Statutory theft*

Horseneck moves to dismiss Malik's claim for statutory theft. Connecticut law provides that "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Conn. Gen. Stat. § 52-564. A civil claim for statutory theft requires a plaintiff to prove the same elements as would be required to prove a crime of larceny under Conn. Gen. Stat. § 53a-119. *See Stuart v. Stuart,* 996 A.2d 259, 268 (Conn. 2010); *Emigrant Mortg. Co., Inc. v. Travelers Prop. Cas. Corp.*, 2020 WL 616577, at *3 (D. Conn. 2020). Like a claim for conversion, a claim for statutory theft generally requires proof of "an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights." *Howard v. MacDonald*, 270 Conn. 111, 129 n.8 (2004) (internal quotations omitted). Thus, "the party alleging conversion or statutory theft must prove a sufficient property interest in the items in question." *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408, 419 (Conn. 2007).

Malik alleges that Horseneck has "wrongfully withheld the remainder of [Malik's] fees, or $834,375, with the intent to deprive [Malik] of the remaining fees and/or with the intent to appropriate the remaining fees to itself." Doc. #1 at 5 (¶ 25). But this is not enough to state a

4

claim of statutory theft under Connecticut law. While "money can be the subject of statutory theft," a plaintiff must initially establish the "legal ownership or right to possession of specifically identifiable moneys." *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 771-72 (2006). That is, "a party must show ownership or the right to possess specific, identifiable money, rather than the right to the payment of money generally." *Mystic Color Lab,* 284 Conn. at 421.

Malik has alleged at most a denial of a contractual right to payment rather than a conversion of specifically identifiable moneys which Malik owned or had the right to possess. The factual allegations do not show that Horseneck functioned as a conduit for or custodian of funds that belonged in the first instance to Malik.

Nor does Malik allege facts to show that Horseneck's conduct otherwise qualifies as criminal larceny under Connecticut law. *See* Conn. Gen. Stat. § 53a-119. Although Malik argues that the conduct amounts to a theft of services in violation of Conn. Gen. Stat. § 53a-119(7)(C), this provision applies to the theft of labor services only if the defendant obtains or controls "labor in the employ of another person" and then "uses or diverts to the use of himself or a third person such labor." The complaint does not allege that Horseneck itself "use[d]" Malik's labor or that Horseneck "divert[ed] to the use of himself or a third person" Malik's labor.

Moreover, state courts have soundly concluded that a general "[f]ailure to pay for services does not, in and of itself, constitute larceny or theft." *BKM Enterprises v. Budget Modular Workstations, Inc.*, 2005 WL 3163938, at *1 (Conn. Super. Ct. 2005); *Delta Capital Grp., LLC v. Smith*, 1998 WL 167293, at *3 (Conn. Super. Ct. 1998) (rejecting application of § 53a-119(7)(C) and explaining that "[n]o court has expanded the definition of theft of services

beyond the statutory parameters to include a situation, as in the present case, where a party to a contract has failed to honor his contractual obligation to pay for services.").

Accordingly, I will dismiss Malik's claim for statutory theft. *See, e.g.*, *Alqamus v. Pac. Specialty Ins. Co.*, 2015 WL 5722722, at *4 (D. Conn. 2015) (dismissing statutory theft claim because "this case concerns a debt allegedly owed under a contract, and thus a statutory theft claim cannot lie"); *Kopperl v. Bain*, 23 F. Supp. 3d 97, 108-09 (D. Conn. 2014) (dismissing statutory theft claim involving breach of executory contract to make future transfers of company ownership interests because plaintiff failed to allege facts showing property in plaintiff's possession capable of conversion).[1]

### Breach of the implied covenant of good faith and fair dealing

Horseneck next moves to dismiss the claim for breach of the implied covenant of good faith and fair dealing. "It is axiomatic that the implied duty of good faith and fair dealing is a covenant implied into a contract or contractual relationship." *Hoskins v. Titan Value Equities Group, Inc.*, 252 Conn. 789, 792 (2000). A claim for breach of the implied covenant may be asserted not only when parties enter into an express contract but also if they enter into an implied contract. *See Jones v. H.N.S. Mgmt. Co.*, 92 Conn. App. 223, 227 (2005).

Under Connecticut law, a plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must prove three elements: (1) that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; (2) that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits of the contract; and (3) that the defendant acted in bad faith. *See*

---

[1] Malik relies on several state trial court decisions. *See*; *Media Horizons, Inc., LLC v. Kane*, 2015 WL 5805945 (Conn. Super. Ct. 2015); *William Raveis Real Estate, Inc. v. Brancale*, 2013 WL 656884 (Conn. Super. Ct. 2013); *Gates v. Cartwright*, 2012 WL 6901151 (Conn. Super. Ct. 2012). These decisions are distinguishable or not persuasive for substantially the reasons stated in Horseneck's reply memorandum. Doc. #24.

*Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 359-60 (D. Conn. 2014); *see also Capstone Bldg. Corp. v. American Motorists Ins. Co.*, 308 Conn. 760, 794-95 (2013) (explaining that claim for breach of the implied covenant must be accompanied by bad faith but noting that the claim "is not implicated by conduct that does not impair contractual rights").

Malik's complaint alleges an implied covenant claim as to two different contracts: the implied contract for the 2018 consulting services and the express contract in the form of the PPA. As to the implied contract, the complaint adequately alleges facts to establish each of the three elements for an implied covenant claim. First, Malik alleges the existence of a contract— namely, an agreement-in-fact or implied contract as to the 2018 consulting arrangement. "An implied in fact contract is the same as an express contract, except that assent is not expressed in words, but is implied from the conduct of the parties." *Mahon v. Chicago Title Ins. Co.*, 296 F.R.D. 63, 78 (D. Conn. 2013).

Second, Malik alleges that Horseneck has failed to pay hundreds of thousands of dollars that were owed under the implied contract. This allegation is enough to show a breach that has injured Malik's right to receive benefits under the contract.

Third, Malik alleges that Horseneck acted in bad faith by withholding payment on the ground of unresolved tax questions while at the same time failing to work toward resolving those questions and claiming that the PPA cut off Malik's right to recover full fees. Doc. #1 at 7-8 (¶ 40). These allegations are enough to suggest that Horseneck was more than merely negligent but acted with a dishonest purpose as required to sustain a claim for breach of the implied covenant of good faith and fair dealing. *See Capstone*, 308 Conn. at 795.

As to the PPA agreement, the complaint alleges that the PPA was a contractual agreement. The complaint further alleges that Malik "agreed to accept the initial partial payment,

on the express understanding that additional fees would be paid once the tax questions—if indeed there were any—were resolved." Doc. #1 at 4 (¶ 15). And the complaint alleges that Horseneck engaged in bad faith to deny Malik some of the benefits of the PPA by promising to work toward resolving the tax questions but not actually doing so, as well as by means of refusing Malik's request for records "under the Partial Payment Agreement." *Id.* at 8 (¶ 41). Assuming the PPA says what Malik alleges it does, this is enough to sustain an implied covenant claim as to the PPA

Horseneck faults Malik for failing to allege the implied covenant claim with particularity as is required for claims of fraud under Fed. R. Civ. P. 9(b). But Horseneck does not show that the implied covenant claim—as pleaded by Malik—involves fraud that would make it subject to the requirements of Rule 9(b). As the Connecticut Supreme Court has explained, the "bad faith" necessary to sustain an implied covenant may be established not only by "actual or constructive fraud, or a design to mislead or deceive another," but also by "a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Capstone*, 308 Conn. at 795.

Because the allegations specific to Malik's implied covenant claim do not allege fraud, *see* Doc. #1 at 7-8 (¶¶ 38-42), the heightened pleading requirements of Rule 9(b) do not apply to Malik's claim. *Cf. Carney v. Lopez*, 933 F. Supp. 2d 365, 376 (D. Conn. 2013) ("A breach of fiduciary duty claim will implicate the heightened pleading standard of Rule 9(b) only if it includes a fraud claim."); *see also UBS Asset Mgmt. (New York) Inc. v. Wood Gundy Corp.*, 914 F. Supp. 66, 72 (S.D.N.Y. 1996) (applying Rule 9(b) to implied covenant claims because these claims "arise out of the same alleged misrepresentations and omissions as the fraud claims").

Accordingly, I conclude that the complaint adequately alleges an implied covenant claim for both the implied contract arising from Malik's 2018 consulting services and the express PPA contract. I further conclude that this claim as pleaded by Malik is not subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss (Doc. #14) as to plaintiff's claim for statutory theft (Count Two) and DENIES defendant's motion to dismiss as to plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Count Five).

It is so ordered.

Dated at New Haven this 22nd day of June 2020.

/s/*Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge