UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DR. AL MALIK OFFICE FOR
FINANCIAL AND ECONOMIC CONSULTANCY,

    Plaintiff,

        v.

HORSENECK CAPITAL ADVISORS, LLC

    Defendant.

No. 3:19-CV-01417 (JAM)

# RULING ON
# DISCOVERY MOTIONS

Plaintiff, Dr. Al Malik Office for Financial and Economic Consultancy ("AMOFEC"), brings this action against Horseneck Capital Advisors, LLC ("HCA"), arising out of a consulting fee dispute. Plaintiff contends that Defendant agreed to pay Plaintiff approximately $1,557,500 to provide financial and economic consulting services in Saudi Arabia in 2018, also referred to by the parties as Fund XI. In September 2018, a payment of approximately half of the net fees or, $723,125, was made to AMOFEC. Plaintiff contends that this was a partial payment and seeks payment of the full fee owed. Defendant contends that the $735,125, is Plaintiff's after-tax share of the Fund XI fee. Plaintiff brings this cause of action against HCA under the parties' 2018 agreement alleging breach of contract (Count One), unjust enrichment (Count Three), fraudulent inducement (Count Four), breach of the covenant of good faith and fair dealing (Count Five), specific performance (Count Six), and declaratory judgment (Count Seven).[1] (ECF No. 1).

---

[1] On June 22, 2020, Judge Meyer dismissed Plaintiff's claim for statutory theft (Count Two). (ECF No. 44).

1

On July 10, 2020, Defendant HCA answered the complaint and asserted affirmative defenses and counterclaims alleging fraud in the inducement Fund XI (Count One), fraud in the inducement, the September 2018 Agreement (Count Two), negligent misrepresentation, the September 2018 Agreement (Count Three), tortious interference (Count Four), and breach of the September 2018 Agreement (Count Five). (ECF No. 61).

Before the Court is Plaintiff and Defendant's Motions to Compel **(ECF No. 40, 41).**

## FEDERAL RULE OF CIVIL PROCEDURE 26(b)

**(b) Discovery Scope and Limits.**

> **(1)** *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26.

## BACKGROUND

The following facts, set forth in the complaint, answer, counterclaims, and the parties' briefs, are provided solely as background.

Plaintiff AMOFEC is a sole proprietorship owned and operated by Dr. Ahmed Al Malik, a citizen and resident of Saudi Arabia. AMOFEC provides consulting services for entities seeking funds from investors in Saudi Arabia.

Defendant HCA is a Connecticut limited liability company that raises investment capital for businesses in the United States based in Greenwich, Connecticut, and is managed by

Christopher Franco. HCA was previously known under the names CPF#1, LLC, Rock Point Investment, LLC and QIC, LLC.

**Fund IX**

AMOFEC and HCA (then named "QIC") entered into their first agreement on February 20, 2013. (Pl. Ex. 1). The parties agreed to provide financial and economic consulting services in Saudi Arabia for an investment fund client ("Fund Client"), who was seeking to obtain investment capital from institutional investors in Saudi Arabia. [2] "QIC agree[d] to pay AMOFEC 60% of the net fees actually received by QIC as a result of the Project." *Id.* AMOFEC successfully raised hundreds of millions of dollars from a Saudi investment fund for Fund IX. Defendant received a commission from the Fund Client and transmitted 60% thereof, that is, $2,002,500, to AMOFEC pursuant to the parties' negotiated 60-40 split. (Pl. Ex. 2).

**Fund X**

AMOFEC and HCA (then still named "QIC") entered into their second agreement on September 12, 2013. (Pl. Ex. 3). The parties agreed to work on additional projects for the Fund Client, which was now seeking Saudi institutional investors for its "Fund X" and an unrelated fund. *Id.* For these projects, "QIC agree[d] to pay to AMOFEC **70%** of the fees, net of its expenses, which are actually received by QIC as a result of these Projects, to the extent that such net fees relate to commitments of U.S. $1 billion or less …." *Id.* (emphasis in original). AMOFEC successfully raised hundreds of millions of dollars from Saudi investment funds for Fund X in 2015. Defendant HCA received a commission from the Fund Client and transmitted

---

[2] The parties dispute the character of their working relationship. Plaintiff contends it was "engaged" to provide services, and Defendant contends they entered into a "partnership." Defendant did not provide evidence of a legally formed partnership entity.

3

70% thereof, that is, $3,269,030 to AMOFEC pursuant to the parties' updated 70-30 split. (Pl. Ex. 4).

**Fund XI**

AMOFEC and HCA began discussing work on the Fund Client's next fund, "Fund XI," in 2016. Although the parties did not enter into a written agreement, Plaintiff alleges that they had an agreement-in-fact for HCA to pay 70% of the net fees received as it had done with Fund X. AMOFEC further alleges that it performed under the parties' agreement-in-fact, and HCA received substantial fees from the Fund Client. HSC refused to pay Plaintiff 70% of the net fees as it had before. Plaintiff argues in its moving papers that

> [i]n August 2018, HCA claimed for the first time that AMOFEC's fee could be subject to withholding for U.S. income tax. Over the next several months, HCA delayed and ultimately refused to remit AMOFEC's full payment, with Mr. Franco falsely claiming that "the attorneys" and "the lawyers" had raised tax issues and that he was relying on their "opinion[s]."
>
> HCA has since been required in discovery to admit that there were no such outside attorneys.[3] HCA further admitted that, contrary to Mr. Franco's representations, it never initiated any communications with the IRS to resolve the purported tax issues. Discovery to date has further revealed that Mr. Franco has also lied to Dr. Al Malik about the existence and terms of HCA's initial agreement with the Fund Client; about the dates on which the Fund Client transmitted the net fees to HCA; about the fact that the broker-dealer imposed fees (expenses) of only 5%; and about the fact that Mr. Franco secretly took for himself and an entity controlled by him an additional 6% that he falsely claimed to be broker-dealer expenses.[4]

(ECF No. 41 at 4).

HCA articulated a different position in its moving papers.

---

[3] HCA stated in an interrogatory response that Christopher Franco conducted "independent research" on the tax issues "caused by AMOFEC's misrepresentation and/or failure to pay its U.S. taxes during the course of the parties' partnership…." (Pl. Ex. B at 2-3).
[4] Plaintiff appended various emails to AMOFEC from Christopher Franco on behalf of HCA regarding the tax withholding issue. (Compl. ¶¶11, 12; Pl. Ex. 14, 15, 16, 19, 20).

4

>This action arises out of a dispute concerning the purported remaining amount of a 2018 fee payable to AMOFEC (the "2018 Fee"). AMOFEC contends that it is entitled to seventy-percent (70%) of the 2018 Fee after expenses, but before payment of United States income tax. HCA contends that United States income tax was required to be paid on the entire 2018 Fee, that HCA paid United States income tax on the full 2018 Fee, and that AMOFEC's share of the net after-tax 2018 is at most sixty-five-percent (65%), not seventy-percent (70%). Lastly, HCA contends that AMOFEC is not entitled to any further payment regardless of the taxability of the 2018 Fee because it engaged in various wrongful acts and made misrepresentations that caused substantial damage to HCA.

(ECF No. 40 at 1).

**DISCUSSION**

As a preliminary matter, the Court notes that throughout the pleadings the parties use strong language accusing both Dr. Al Malik and Mr. Franco of lying, misconduct, abuse, betrayal, bullying, distorting/mischaracterizing the facts, alleging false claims and the like. Their distrust is clear. The Court will not address these accusations. What is clear is that the parties' business relationship is severed and they have strong and divergent opinions about how and why the relationship broke down and whether money is owed to AMOFEC. Both parties are represented by competent counsel, who the Court assumes, would not make these claims lightly. The parties may feel confident and justified in making these personal accusations, they are not relevant to the task before the Court.

Pending are two discovery motions referred by Judge Meyer because the parties could not successfully meet and confer on resolving the exchange of information.

## PLAINTIFF'S MOTION TO COMPEL (ECF No. 41)

### 1. Document Requests Nos. 9, 12 and 16 and Interrogatories 9, 10, and 11, Regarding the Movement of Funds to HCA, Franco individually, and/or Related Entities

AMOFEC's Requests for Production include several requests that would encompass documents reflecting the flow of funds from the broker-dealer Fieldpoint Private Securities, LLC to HCA, Mr. Franco individually, and/or entities related to them.

**Request No. 9.** All documents and communications concerning Fieldpoint's or any other broker-dealer's fees in connection with the 2018 Engagement.

**Request No. 12**. All documents and communications concerning any transfer of funds from Fieldpoint or any other broker-dealer to Defendant and/or to Plaintiff in connection with the 2018 Engagement.

**Request No. 16.** All documents concerning Defendant's claimed expenses affecting Plaintiff's fees in connection with the 2018 Engagement.

To all three requests, Defendant responded that it "will produce all nonprivileged documents responsive to this request that are in its possession, custody or control."

The Requests for Production define the term "Defendant" as "refer[ring] to Horseneck Capital Advisors, LLC, as well as any of its officers, directors, employees, agents, predecessors, successors, d/b/a's, alter egos, affiliates, and any person acting on its behalf." (Pl. Ex. A). Fieldpoint acted as the broker-dealer for Fund XI. Documents produced by Fieldpoint in this litigation show that the Fund Client wired gross fees of $2,575,000 to Fieldpoint on July 13, 2018. (Pl. Sealed Ex. 17). Fieldpoint retained 5% as its fee and transmitted $2,447,187.50 to Christopher Franco on July 18, 2018. (Pl. Sealed Ex. 18).

AMOFEC subsequently served a Second Set of Interrogatories to obtain information regarding the flow of funds and the 11% fee.

**Interrogatory No. 9:** With respect to Fieldpoint Private Securities' 'Direct Deposit # 12589' 'Chkg 1302' in the amount of $2,447,187.50, as reflected in the Payroll Journal for "Franco, Chrsto…(I)" with "Run Date 07/17/18", attached hereto as Exhibit A, state the name and owner

6

of the account into which these funds were transferred and the name and branch address of the financial institution where this account is located.

**Interrogatory No. 10:** for the $2,281,062 in gross receipts or sales reported on the Schedule C for The Franco Group LLC, Business name "Horseneck Capital Advisors LLC", produced by Defendant at HORSENECK_00320-21, identify:

(a) The date(s) on which each item of income comprising gross receipts or sales was received by Horseneck and the amount and source of each such item;
(b) The name and owner of the account(s) in which these items were received, and the name and branch address of the financial institution where the account(s) were located; and
(c) The identify the person or entity that sent these funds, and the name and address of the financial institution from which the funds were sent.

**Interrogatory No. 11.** Explain, with particularity, why Fieldpoint Private Securities' 'Direct Deposit # 12589' 'Chkg 1302' is in the amount of $2,447,187.50, but Horseneck reported only $2,281,062 in gross receipts or sales on the Schedule C produced by Defendant at HORSENECK_00320-32 [sic]. If any individuals or entities received or retained any portion of the difference ($166,125.50), identify each individual or entity, and for each individual or entity state:

(a) The date(s) and amounts(s) of the funds received or retained;
(b) The name and owner of the account(s) in which the funds were received or retained, and the name and owner of the account(s) in which the funds were received or retained, and the name and branch address of the financial institution where the account was located; and
(c) The identity of the person or entity that sent these funds, and the name and address of the financial institution from which the funds were sent.

Plaintiff argues that the requested discovery will show that HCA never engaged in the purported tax withholding that it invoked to retain over $800,000 due to AMOFEC, and that tax and financial records and information reflecting payments to/from HCA, its controlling person Christopher Franco, and related entities for work on Fund XI will establish *when* the net fees became available to HCA, and whether, how, and to whom HCA diverted the funds. Finally, Plaintiff argues that "if HCA is going to continue to rely on a defense that it does not owe AMOFEC its full fee because HCA supposedly paid taxes on it, HCA must produce a complete unredacted copy of the relevant 2018 tax return to support that defense or have the defense

stricken from the case. AMOFEC does not object to an "Attorney's Eyes Only" production designation for the tax return.

 Instruction 7 to Plaintiff's First Request for Production of Documents provides,

> In responding to these requests, Defendant shall produce all requested documents in its possession, custody, or control, and shall include all such documents in the possession, custody, or control of any third party or parties to whom it has surrendered possession, custody, or control, or who are acting on its behalf, or who have otherwise obtained possession, custody, or control to it. If Defendant cannot produce any document after exercising due diligence to secure such document, it is to so state, identify who has control and he location of the document, describe the documents it is attempting to secure and he efforts being made to secure same, and respond to the remainder of the request.

*Id.* at 3. HCA did not object to the definition of "defendant" to include "offices" and "affiliates," or the instruction to produce documents in the possession custody, or control of any third party or parties. Further, HCA makes no claims that the requested discovery is privileged, or burdensome or not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b).

 After a careful review of the pleadings, including the complaint, answer, affirmative defenses, counterclaims, the Court finds that Plaintiff has articulated a sufficient basis for this discovery to test its claims and HCS's defenses and counterclaims. Accordingly, Plaintiff's Motion to Compel is **GRANTED** as to Requests for Production 9, 12 and 16 and Interrogatories 9, 10, and 11.

 **2. Complete Unredacted Copy of the 2018 Tax Return on which HCA and its Controlling Person Reported Income Relating to Fund XI, and Related Information**

**Request No. 23.** All documents and communications concerning any tax payment in connection with the 2018 Engagement.

**Request No. 24.** All tax returns and correspondence with tax authorities that in any part concern or reflect Plaintiff's or Defendant's fees in connection with the 2018 Engagement.

 To both requests HCA responded,

> Defendant objects to this request to the extent that it seeks tax returns or other confidential tax documents of any person other than Defendant. Subject to the

8

> foregoing objection and without waiving the same, Defendant will produce all nonprivileged documents responsive to this request that are in its possession, custody, or control.

(ECF No. 41 at 18). In response, HCA initially produced a 2-page Schedule C. Plaintiff stated that this Schedule C "did not reflect that HCA had made a partial payment of $723,125 to AMOFEC in 2018, either as an expense or any other item." *Id*. To their credit, counsel engaged in several rounds of a meet and confer to narrow their dispute. HCA subsequently agreed to produce a copy of Mr. Franco's entire joint tax return. Plaintiff contends that this production "was a meaningless since it redacted nearly all substantive information beyond the previously-produced Schedule C." (ECF No. 41 at 19). Plaintiff has demonstrated a sufficient basis for production of the tax return and HCA makes no claims that the requested discovery is privileged, or burdensome or not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b). Rather, HCA argues that the requests are irrelevant and infringe on the confidentiality of nonparties.

HCA contends that "this Court should refuse to require HCA to ask third-parties to provide it with documents and information so that it can then produce the third-parties' wholly irrelevant, private financial information." (ECF No. 51 at 12). The Court agrees with Plaintiff that "HCA's objections based on separate corporate structure and relevance are not well-founded" and that "any confidentiality concerns could be addressed by an "Attorney's Eyes Only" designation for the tax returns." (ECF No. 41 at 20). Christopher Franco was the sole manager of HCA. (Pl. Ex. D). He was also the sole manager of HCA's purported proprietor, The Franco Group. (Pl. Ex. E). Mr. Franco also signed and countersigned the agreements giving 1% of HCA's revenues to The Franco Group, and 5% to himself individually. (Pl Ex. H and I). Plaintiff continues that "given the substantial fees earned from the Fund Client, paying 1% and 5% to The Franco Group and Mr. Franco individually would have diverted $150,000 from the

net fees that HCA was supposed to split 70-30 with AMOFEC." (ECF No 41 at 21). The Schedule C for The Franco Group that was produced redacted all lines relating to its income and Mr. Franco redacted all lines relating to income on his Form. Plaintiff points out that "Schedule C for HCA does *not* report any payments to The Franco Group or Mr. Franco individually as expenses, raising the question of whether HCA actually paid, and The Franco Group and Mr. Franco reported, the 1% and 5% fees." (ECF No. 41 at 21). Finally, Plaintiff articulated another basis why the production of a copy of an unredacted 2018 tax return is relevant to this litigation because "Mr. Franco has argued that HCA was obligated to report and pay taxes on AMOFEC's portion of the net fee…[and] Mr. Franco should have also reported and paid taxes on any income received by The Franco Group and Mr. Franco relating to Fund XI fees." (ECF No. 41 at 21). If in fact HCA reported the entire net fee and paid taxes on it, its obligations to AMOFEC would be reduced. An unredacted copy of the tax return is needed to test HCA's defense and to see whether all streams of income from Fund XI fees were reported across the entirety of the return.

After a careful review of the pleadings, including the complaint, answer, affirmative defenses, and counterclaims, the Court finds that Plaintiff has articulated a sufficient basis for this discovery to test its claims and HCS's defenses and counterclaims. Accordingly, Plaintiff's Motion to Compel responses to Requests for Production 23 and 24 is **GRANTED**. Christopher Franco will produce an unredacted copy of his Joint Income Tax Return 2018, pursuant to an "Attorney's Eyes Only" designation.

10

**DEFENDANT'S MOTION TO COMPEL**

1. **Interrogatories Nos. 5 and 6 of HCA's First Set of Interrogatories and Request for Production No. 8 of HCA's Second Set of Requests for Production**

**Interrogatory No. 5.** State with particularity the Plaintiff's whereabouts during the period November 1, 2017 through January 31, 2018.

**Interrogatory No. 6.** State whether the Plaintiff was detained as part of the Purge at any time during the period November 1, 2017 to January 31, 2018, and if so, state the dates during which the Plaintiff was detained.

To both interrogatories, AMOFEC responded, "Plaintiff objects to this Interrogatory as irrelevant to the claims in this case and harassing." (Def. Ex. E).

HCA contends that "this information is relevant to AMOFEC's claims that it performed under what it alleges was an agreement-in-fact between it and HCA." (ECF No. 40 at 5-6). Specifically, it is relevant to AMOFEC's contention that it was engaged to procure Saudi investors for Fund XI including SAMA. However, SAMA did not invest in Fund XI as it had done with Funds IX and X. HCA states that Dr. Al Malik could not be reached during the dates that corresponded to the Purge. Defendant argues that responses to these interrogatories are relevant "to show that Dr. Al Malik was out of favor with MBS [Mohammad Bin Salman], or more likely misrepresented his relationship with MBS to HCA in 2017." (ECF No. 40 at 6). HCA further asserts that "evidence of Dr. Al Malik's detention in the Purge is relevant to his performance under the agreement that he alleges existed between the Partners and which forms the basis for at least some of his claims for relief" and relevant to HCA's counterclaims based on fraud in the inducement (Count One). HSC alleges in Count One, among other things, that "AMOFEC represented to HCA that AMOFEC had excellent relationships with the new Saudi leadership, including MBS" and that these

11

        false representations was to its detriment as MBS barred SAMA from investing in Fund XI because…Dr. Al Malik had no ability to positively assist with the decisions of MBS or the new Saudi regime and was in fact a detriment as he was seriously out of favor with MBS, which was later evidenced when he was detained in the "purge" targeting corrupt Saudi businessmen and officials.

(ECF No. 61 at ¶¶85-93 (Count One)).

        AMOFEC argues that this discovery is not relevant and propounded for the purpose of harassing AMOEC and Dr. Al Malik. Plaintiff makes no claims that the requested discovery is privileged, or burdensome or not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b).

        After a careful review of the pleadings, including the complaint, answer, affirmative defenses, counterclaims, the Court finds that Defendant has articulated a sufficient basis for this discovery to test its counterclaims and AMOFEC's allegations and defenses. Accordingly, Defendant's Motion to Compel **(ECF No. 40)** is **GRANTED** as to Interrogatories 5 and 6.

**Request for Production No. 8.** All Documents and Communications concerning charges of corruption against the Plaintiff, including the resolution of such charges, whether by settlement or otherwise.

        Plaintiff asserted an objection stating that "this Request is irrelevant to the claims in this case, lacking in foundation and harassing." HCA agreed "to limit the scope of RFP 8 so that it applies only to the Purge." (ECF No. 40 at 6). For the reasons stated above, Defendant's Motion to Compel **(ECF No. 40)** is **GRANTED** as to Request for Production no. 8 of HCA's Second Set of Requests for Production, as limited above. If no documents exist, Plaintiff will state so under oath in writing.

    2. **Requests for Production Nos. 4, 5, 6, and 7 of HCA's Second Set of Requests for Production and Interrogatory Nos. 2, 3 and 4 of HCA's Second Set of Interrogatories**

**Requests for Production No. 4.** Documents and Communications concerning the United States tax treatment of income paid to Plaintiff from United States based clients, e.g., Exxon and ATT, including documents and communications supporting Plaintiff's contention to HCA that no

12

United States income tax was due or paid on that income and the reason(s) why no such tax was due or paid.

**Response.** Plaintiff objects to this Request as overly broad, unduly burdensome, and harassing. Plaintiff's income-generating work performed for other U.S.-based clients is materially distinguishable from the work performed in connection with this action.

**Request for Production 5, 6 and 7.** Documents and Communications, including tax returns filed by Plaintiff, for the years in which any tax on income attributable to Fund IX, [X and XI] was paid by Plaintiff, regardless of the jurisdiction in which it was paid.

**Responses.** Plaintiff objects to these Requests as overbroad and unduly burdensome to the extent it seeks discovery of information unrelated to this action and refers defendant to Plaintiff's Response to Interrogatory No[s]. 2, [3 and 4] in Defendant's Second Set of Interrogatories.

**Interrogatories 2, 3 and 4.** State with particularity the full amount of tax paid by the Plaintiff on its Fund IX, [X and XI] fee, regardless of the taxing authority.

**Responses:** Plaintiff objects to these Interrogatories as overbroad and unduly burdensome to the extent it seeks discovery of information unrelated to this action. Subject to and without waiving the foregoing objections, Plaintiff states that it paid no tax to U.S. taxing authorities regarding its Fund XI, [X and XI].

The Court agrees with Plaintiff's argument that the "only AMOFEC tax information that could possibly be relevant to the parties' dispute is whether AMOFEC paid U.S. income taxes on the fees it earned for Funds IX, X, and XI." (ECF No. 50 at 7). AMOFEC has already responded to HCA's Second Set of Interrogatories Nos. 2, 3, 4, that AMOFEC "paid no tax to U.S. taxing authorities" regarding its Fund IX, X and XI fees." (Def. Ex. F). Accordingly, Defendant's Motion to Compel **(ECF No. 40)** is **DENIED** as to Requests for Production 4, 5 and 6 of HCA's Second Set of Requests for Production and Interrogatories No. 2, 3 and 4 of HCA's Second Set of Interrogatories.

## CONCLUSION

As set forth above, Defendant's Motion to Compel **(ECF No. 40)** is **GRANTED in part and DENIED in part,** and Plaintiff's Motion for Protective Order **(ECF No. 41)** is **GRANTED**.

13

The Court remains available to assist the parties with discovery issues as they arise and/or with initiation of discussions to resolve this case.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED, this 27th day of July 2020, at Bridgeport, Connecticut.

/s/ *William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge